# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | No. 3:99-cr-264-6 (VAB) |
| LYLE JONES, *Defendant*. | |

## RULING AND ORDER ON FIRST STEP ACT MOTION FOR IMMEDIATE RELEASE OR RESENTENCING

Lyle Jones ("Defendant") moves for his immediate release or resentencing under Section 404 of the recently-enacted First Step Act. *See* First Step Act Motion for Immediate Release or Resentencing, dated May 29, 2019 ("Def.'s Mot."), ECF No. 2508; *see also* Memorandum in Support of Def.'s Mot., dated July 3, 2019 ("Def.'s Mem."), ECF No. 2527. Mr. Jones is currently serving three concurrent life sentences. He has most recently been incarcerated at Gilmer Federal Correctional Institution in Glenville, West Virginia. *See* Def.'s Mem. at 9, 26.

The United States of America (the "Government") has opposed Mr. Jones's motion. Government's Opposition to Def.'s Mot., dated Aug. 9, 2019 ("Gov't Opp."), ECF No. 2552.

On September 4, 2019, the Court held a hearing on the motion. Minute Entry, dated Sept. 4, 2019, ECF No. 2572.

For the reasons explained below, the Court (1) **GRANTS** the motion; (2) **ORDERS** that Mr. Jones's sentence of incarceration be **REDUCED** to **TIME SERVED**; (3) **IMPOSES** a term of supervised release of **FIVE (5) YEARS**.

The Bureau of Prisons is authorized to delay execution of this Order for up to ten (10) days after its issuance so that the Bureau may make necessary arrangements related to Mr.

Jones's release. The Bureau of Prisons is directed to proceed as expeditiously as possible so as to avoid any unnecessary delay.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

For nearly the last twenty years, Mr. Jones has been in prison for his role in "an extensive drug trafficking enterprise in Bridgeport, Connecticut," in the P.T. Barnum Housing Project in the late 1990s. *United States v. Jones*, 294 F. App'x 624, 626 (2d Cir. 2008) (summary order); *see also United States v. Luke Jones*, 482 F.3d 60, 63–66 (2d Cir. 2006) (detailing evidence as to the conspiracy introduced at trial against Mr. Jones's uncle, Luke Jones, in light most favorable to the Government); *Lyle Jones v. United States*, No. 3:12-cv-601 (EBB), 2014 WL 6871198, at *4–5 (D. Conn. Dec. 5, 2014) (detailing evidence as to the enterprise introduced at trial against Mr. Jones).

On November 16, 1999, a federal grand jury returned a sealed, multi-count indictment against Luke Jones, Lonnie Jones, and Lance T. Jones. Sealed Indictment, dated Nov. 16, 1999, ECF No. 1.

On February 3, 2000, a federal grand jury returned a superseding indictment against the three originally-named defendants, Lyle Jones, and ten other alleged members of the drug trafficking enterprise. Superseding Indictment, dated Feb. 3, 2000, ECF No. 36. The superseding indictment charged Lyle Jones with knowingly and intentionally conspiring to possess with intent to distribute and to distribute heroin, cocaine, and cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 846, from January 1997 to December 1999 (Count One). *Id.*

On March 9, 2000, Mr. Jones appeared before U.S Magistrate Judge Holly B. Fitzsimmons for his arraignment on the superseding indictment and pleaded not guilty to the drug conspiracy charge. *See* Docket Entry, dated Mar. 9, 2000, ECF No. 88.

On November 7, 2000, a federal grand jury returned a second superseding indictment against Mr. Jones and the other alleged members of the drug trafficking enterprise. Second Superseding Indictment, dated Nov. 7, 2000, ECF No. 455;

On January 5, 2001, a federal grand jury returned a third superseding indictment against Mr. Jones and other alleged members of the drug trafficking enterprise. Third Superseding Indictment, dated Jan. 5, 2001, ECF No. 538. This indictment also charged Mr. Jones with violent crimes in aid of racketeering activity, including: (1) conspiracy to murder Lawson Day, in violation of Connecticut General Statutes §§ 53a-48(a) (conspiracy) and 53a-54a (murder), and 18 U.S.C. § 1959(a)(5) (attempting or conspiring to commit murder), *id.* at Count Five; (2) attempted murder of Lawson Day, in violation of Connecticut General Statutes §§ 53a-49(a) (attempt) and 53a-54a (murder), 18 U.S.C. § 1959(a)(5) (attempting or conspiring to commit murder or kidnapping), and 18 U.S.C. § 2 (aiding and abetting commission of offense against United States punishable as principal), *id.* at Count Six; and (3) knowingly using and carrying a firearm during and in relation to conspiracy to commit murder and attempted murder, in violation of 18 U.S.C. § 924(c)(1) and 18 U.S.C. § 2 (aiding and abetting commission of offense against United States punishable as principal), *id.* at Count Seven.

On January 12, 2001, Mr. Jones appeared before U.S. Magistrate Judge Fitzsimmons to be arraigned again and pleaded not guilty to Counts One, Five, Six, and Seven in the third superseding indictment. *See* Minute Entry, dated Jan. 12, 2001, ECF No. 543.

On April 19, 2001, a federal grand jury returned a fourth superseding indictment against Mr. Jones and other alleged members of the drug trafficking enterprise. Fourth Superseding Indictment, dated Apr. 19, 2001, ECF No. 694. This indictment charged Mr. Jones with the following racketeering acts in violation of 18 U.S.C. § 1962(c): (1) conspiracy to distribute

heroin, cocaine, and cocaine base in the "Middle Court" area of the P.T. Barnum Housing Project, in violation of 21 U.S.C. §§ 841(a)(1) and 846, *id.* at Count One, Racketeering Act 1-A, ¶¶ 14–15; (2) conspiracy to murder members and associates of a rival gang known as "the Foundation," in violation of Connecticut General Statutes §§ 53a-48(a) (conspiracy) and 53a-54a (murder), *id.* at Count One, Racketeering Act 4, ¶ 21; and (3) attempted murder and conspiracy to murder Lawson Day, in violation of Connecticut General Statutes §§ 53a-48(a) (conspiracy), 53a-49(a) (attempt), and 53a-54a (murder), *id.* at Count One, Racketeering Acts 5, 5-A, and 5-B, ¶¶ 22–24.

The Fourth Superseding Indictment also charged him with the following crimes: (1) RICO conspiracy to conduct and participate, directly and indirectly, in the conduct of the affairs of the Enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(d), *id.* at Count Two; (2) knowingly and intentionally conspiring to possess with intent to distribute and to distribute heroin, cocaine, and cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 846, from January 1997 to February 24, 2000, *id.* at Count Three; (3) conspiracy to murder Lawson Day, in violation of Connecticut General Statutes §§ 53a-48(a) (conspiracy) and 53a-54a (murder), and 18 U.S.C. § 1959(a)(5) (attempting or conspiring to commit murder), *id.* at Count Ten; (4) attempted murder of Lawson Day, in violation of Connecticut General Statutes §§ 53a-49(a) (attempt) and 53a-54a (murder), 18 U.S.C. § 1959(a)(5) (attempting or conspiring to commit murder or kidnapping), and 18 U.S.C. § 2 (aiding and abetting commission of offense against United States punishable as principal), *id.* at Count Eleven; (5) and knowingly using and carrying a firearm during and in relation to the attempted murder of Lawson Day, in violation of 18 U.S.C. § 924(c)(1) and 18 U.S.C. § 2 (aiding and abetting commission of offense against United States punishable as principal), *id.* at Count Twelve.

On May 16, 2001, Mr. Jones appeared before U.S. Magistrate Judge Fitzsimmons for another arraignment and pleaded not guilty to Counts One, Two, Three, Ten, Eleven, and Twelve of the fourth superseding indictment.

On December 20, 2001, a federal grand jury returned a fifth superseding indictment against Mr. Jones and other alleged members of the drug trafficking enterprise. Fifth Superseding Indictment, dated Dec. 20, 2001, ECF No. 813. This indictment charged Mr. Jones with the following racketeering acts, in violation of 18 U.S.C. § 1962(c): (1) conspiracy to distribute heroin, cocaine, and cocaine base in the "Middle Court" area of the P.T. Barnum Housing Project, in violation of 21 U.S.C. §§ 841(a)(1) and 846, *id.* at Count One, Racketeering Act 1-C, ¶ 24; (2) conspiracy to murder members and associates of a rival gang known as "the Foundation," in violation of Connecticut General Statutes §§ 53a-48(a) (conspiracy) and 53a-54a (murder), *id.* at Count One, Racketeering Act 9, ¶ 41; (3) attempted murder and conspiracy to murder Lawson Day, in violation of Connecticut General Statutes §§ 53a-48(a) (conspiracy), 53a-49(a) (attempt), and 53a-54a (murder), *id.* at Count One, Racketeering Acts 10, 10-A, and 10-B, ¶¶ 42–44; and (4) obstruction/tampering with a witness, Person #3, on May 17, 2001, in violation of 18 U.S.C. § 1512(b)(3), *id.* at Count One, Racketeering Act 15, ¶ 51.

It also charged him with the following crimes: (1) RICO conspiracy to conduct and participate, directly and indirectly, in the conduct of the affairs of the Enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(d), *id.* at Count Two; (2) knowingly and intentionally conspiring to possess with intent to distribute and to distribute heroin, cocaine, and cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 846, from January 1997 to February 24, 2000, *id.* at Count Five; (3) conspiracy to murder Lawson Day, in violation of Connecticut General Statutes §§ 53a-48(a) (conspiracy) and 53a-54a (murder), and 18 U.S.C.

§ 1959(a)(5) (attempting or conspiring to commit murder), *id.* at Count Eighteen; (4) attempted murder of Lawson Day, in violation of Connecticut General Statutes §§ 53a-49(a) (attempt) and 53a-54a (murder), 18 U.S.C. § 1959(a)(5) (attempting or conspiring to commit murder or kidnapping), and 18 U.S.C. § 2 (aiding and abetting commission of offense against United States punishable as principal), *id.* at Count Nineteen; (5) and knowingly using and carrying a firearm during and in relation to the attempted murder of Lawson Day, in violation of 18 U.S.C. § 924(c)(1) and 18 U.S.C. § 2 (aiding and abetting commission of offense against United States punishable as principal), *id.* at Count Twenty; and (6) knowingly attempting to intimidate, threaten, and use physical force against Person #3 with intent to cause and induce them to withhold testimony from the grand jury and the court, in violation of 18 U.S.C. § 1512(b)(2)(A) and (i), *id.* at Count Twenty-Nine.

On January 25, 2002, Mr. Jones appeared before U.S. Magistrate Judge Fitzsimmons for another arraignment and pleaded not guilty to Counts One, Two, Five, Eighteen, Nineteen, Twenty, and Twenty-Nine of the fifth superseding indictment.

From February 24, 2000 until his trial**,** Mr. Jones remained in pre-trial detention.

On October 10, 2002, United States District Judge Alan H. Nevas granted the Government's motion to dismiss Count Twenty-Nine and Racketeering Act 15, charging Mr. Jones with obstruction/tampering with a witness. *See* Docket Entries, dated Oct. 10, 2002.

On November 20, 2002, after a twenty-day jury trial, Judge Nevas declared a mistrial. *See* Docket Entry, dated Nov. 20, 2002, ECF No. 1259.

On December 3, 2002, Mr. Jones's case was transferred to United States District Judge Peter C. Dorsey. Order of Transfer, dated Dec. 3, 2002, ECF No. 1263.

On April 24, 2003, after a thirty-day jury trial spanning seven weeks before Judge Dorsey, a jury convicted Mr. Jones of Count One (RICO Conspiracy, 18 U.S.C. § 1962(c)), finding that the Government had proven his involvement in Racketeering Act 1-C, the Middle Court drug conspiracy, and Racketeering Act 9, conspiracy to murder Foundation members and associates. The jury did not reach agreement, however, as to whether the Government had proven Racketeering Acts 10-A (conspiracy to murder Lawson Day) and 10-B (attempted murder of Lawson Day). *See* Verdict Form, filed Apr. 24, 2003, ECF No. 1408, at 1–4.

The jury also convicted Mr. Jones of Count Two (RICO Conspiracy, 18 U.S.C. § 1962(d)) and Count Five (conspiracy to possess with intent to distribute heroin, cocaine, and cocaine base). *Id.* at 5–6. With respect to quantity, the jury found that Mr. Jones's agreement to possess with intent to distribute involved 1,000 grams or more of heroin and 50 grams or more of cocaine base, but only a mixture or substance containing a "detectable amount" of cocaine. *Id.* at 6-7.

The jury did not reach agreement as to Mr. Jones's guilt for Counts Eighteen (conspiracy to murder Lawson Day) and Nineteen (attempted murder of Lawson Day). *Id.* at 21-22. The jury acquitted Mr. Jones of Count Twenty (use of a firearm in relation to the attempted murder of Lawson Day). *Id.* at 22. Judge Dorsey declared a mistrial as to Mr. Jones for Counts Eighteen and Nineteen. Docket Entry, dated Apr. 24, 2003.

On September 3, 2003, under the then-mandatory Sentencing Guidelines, Judge Dorsey sentenced Mr. Jones to (1) life imprisonment without parole on Count One (RICO Conspiracy in violation of 18 U.S.C. § 1962(c), for the racketeering acts of the Middle Court drug conspiracy and the conspiracy to murder Foundation members and associates); (2) life imprisonment without parole on Count Two (RICO Conspiracy in violation of 18 U.S.C. § 1962(d), for

participating, directly and indirectly, in the conduct of the affairs of the Enterprise through a pattern of racketeering activity); and (3) life imprisonment without parole on Count Five (conspiracy to distribute and distribution of more than 1,000 grams of heroin and 50 grams of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846. Judgment, dated Sept. 3, 2003, ECF No. 1491; *see also* Transcript of Proceedings, filed Oct. 10, 2003 ("Sentencing Tr."), ECF No. 1517, at 23:2-19. All three sentences were to run concurrently with one another. *See id.* Judge Dorsey also assessed a $300 special assessment and ordered Mr. Jones ineligible for benefits in accordance with 21 U.S.C. § 862. Sentencing Tr. 23:20-24:4.

In imposing this sentence, Judge Dorsey said the following to Mr. Jones:

> Life is a long sentence, ''m fully aware of that, and I am not entirely content and at ease with a dead end sentence that you face, but as I said to Mr. Leonard Jones, if you in some way can establish through your conduct, in the meantime, your eligibility under a possibility of some kind of other relief in the form of a pardon or commutation of your sentence, you have the power to qualify yourself in that respect by virtue of your conduct in the meantime.
>
> Whether you do that or not is up to you, but I just point that out as something that you might keep in mind. That doesn't give you any guarantees 'cause I don't make the decision, but on the other hand, it is not something that is beyond the realm of possibilities, and if you want a copy of the regulation, Mr. Bashir, that that is discussed in, Mr. Lopez has a copy of it and he can make it available to you.

Sentencing Tr. at 26:4-21.

Mr. Jones subsequently appealed, challenging the sufficiency of evidence underlying his conviction on the murder conspiracy charge. On October 20, 2008, the Second Circuit rejected his challenges, affirming the judgment of conviction. *See United States v. Jones*, 296 F. App'x 179, 181–82 (2d Cir. 2008) ("[T]he jury's finding that Lyle Jones and Nunley conspired to murder members of a rival gang known as the "Foundation" in an effort to protect the Jones organization's narcotics distribution business is also supported by the evidence presented at

trial."). The Second Circuit also rejected his arguments challenging the "methodology set forth in the pre-sentence report ("PSR") and adopted by the District Court for determining the quantities of crack and heroin distributed by the Jones organization," finding that because those arguments were not raised in the District Court, they were effectively waived. *Id.* at 183.

But because Mr. Jones's sentence was imposed under the mandatory Sentencing Guidelines before the U.S. Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), the Second Circuit remanded his case back to Judge Dorsey for consideration of whether they should be resentenced, consistent with its decision in *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). *Id.* at 184.

On April 13, 2009, Judge Dorsey ordered the Government and Mr. Jones to show cause "as to whether this Court should impose new sentences pursuant to *Crosby* and as to whether a hearing for re-sentencing should be held" in Mr. Jones's presence. Order to Show Cause, dated Apr. 13, 2009, ECF No. 2287.

On June 2, 2009, Mr. Jones filed a memorandum in response to the Order to Show Cause, arguing that he should be re-sentenced under *Booker* and *Crosby*. *See* Memorandum in Support of Re-Sentencing, dated June 2, 2009, ECF No. 2296. Mr. Jones argued that his life sentence was imposed "largely because of a PSR guesstimate that he was responsible for 140.4 kilograms of cocaine base that purportedly were distributed between 1996 and 1999," *id.* at 7, and that multiple factors—including the fact that many of his co-conspirators had received post-*Booker* sentence reductions—weighed in favor of re-sentencing, *see id.* at 8–25. He also requested the opportunity to address the Court personally at a re-sentencing so he could "demonstrate that he fully has accepted responsibility for his involvement in the conspiracy, and that he continues to work diligently to make something positive of his life." *Id.* at 25–26.

On June 17, 2009, the Government filed a memorandum opposing re-sentencing. *See* Government's Memorandum in Aid of Post-*Crosby* Proceedings on Remand, dated June 17, 2009, ECF No. 2301, at 8–9 ("In light of the district court's careful consideration of all of the applicable sentencing issues raised by the defendant, and its having presided over a seven-week trial and reviewed the record evidence in its determination that the Guidelines were appropriately calculated at life – including the consideration that even without several of the adjustments the defendant's Guidelines did not change – there is simply no compelling reason to revisit the Court's sentence with a resentencing. The record is devoid of any express comment or suggestion by the Court that it was somehow constrained by the Guidelines, or that it would have reached different conclusions or arrived at a different sentence if the Court were not constrained by the then-mandatory nature of the Sentencing Guidelines.").

On August 11, 2009, Judge Dorsey issued a short order declining to re-sentence Mr. Jones:

> Defendant's motion for re-sentencing is denied.
>
> Though the sentencing guidelines are now required to be considered and are not mandatory as at the time of the original sentencing, upon full review of the record of this case and the pending motion, the factors in the record as rated at the original sentencing remain to be considered now and after consideration there is no basis found from imposing any different sentence even though the guidelines are now only advisory. Accordingly the sentence originally imposed will not be reduced.

Order re: Reduction of Sentence re: Crack Cocaine Offense, dated Aug. 11, 2009, ECF No. 2309.

On August 19, 2009, Mr. Jones appealed Judge Dorsey's refusal to re-sentence him. Notice of Appeal, dated Aug. 19, 2001, ECF No. 2310.

On November 30, 2010, the Second Circuit affirmed his sentence, rejecting Mr. Jones's

various arguments that Judge Dorsey's decision was procedurally or substantively unreasonable:

> Jones first claims that the district court erred on remand in failing to resolve objections raised at his original sentencing hearing to certain aspects of his Presentence Report. Specifically, he objected to (1) the two-level increase in his offense level for Obstruction of Justice pursuant to U.S.S.G. § 3C1.1; (2) the two-level increase in his offense level for the "Use of a Minor" pursuant to U.S.S.G. § 1B1.3(a)(1)(A) & (B) and § 3B1.4; (3) the three criminal history points added pursuant to U.S.S.G. § 4A1.1(d) and 4A1.1(e) because he committed the charged offense while on parole and within two years of release from a previous term of incarceration; and (4) the three criminal history points added for a 1995 state narcotics conviction that he argued should have been considered part of the conduct of conviction. While these objections were raised at the original sentencing hearing, the district court's failure to resolve them was not challenged on appeal. As a result, Jones is precluded by the law of the case doctrine from raising them now.

> The district judge, having presided over the original sentencing in this case, was well aware of the "nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). He indicated that he was aware that the Guidelines were now advisory and that he had fully reviewed the record and the parties' submissions in deciding that there was no reason presented to impose a different sentence in this case. As the district judge said in explaining his decision not to resentence, "the factors in the record as rated at the original sentencing remain to be considered now and after consideration there is no basis found [for] imposing any different sentence."

> Moreover, we find no indication that the district court inadequately considered any of Jones's arguments for resentencing. While Jones argues that a single comment in the government's submission to the district court may have misled the court into believing it could not take into account his age upon release in assessing his risk of recidivism, there is no evidence in the record that the district court was misled. Jones's argument that a lower sentence was necessary to avoid sentencing disparities among his co-defendants both need not be considered by the district court, and was undermined in any case here by the affirmation of life sentences for others of his co-conspirators.

Jones attempts to recast as an argument grounded in § 3553(a)'s sentencing factors the claim that the time he spent incarcerated while the conspiracy was ongoing warranted a reduction in the drug quantity attributed to him, a mitigating role adjustment or a downward departure. Even so construed, however, the record is clear that the district court was fully aware of both Jones's role in the conspiracy and his arguments regarding the proper effect of his prior incarceration on his sentence when it denied resentencing.

Jones argues that the district court erred procedurally by failing to consider his post-sentencing rehabilitation. A district court on a *Crosby* remand, however, is obligated to consider whether to resentence based on "the circumstances existing *at the time of the original sentence.*" Jones's argument that the district court should have specifically addressed the disparate penalties applicable to powder cocaine and cocaine base offenses is likewise unavailing. The quantity of heroin involved in the conspiracy independently gave Jones a base offense level of 38 and, with unchallenged adjustments upward, an advisory Guidelines sentence of life imprisonment. Particularly in such circumstances, there is no reason to conclude that the district court did not consider and reject Jones's request for a reduction based on any powder/cocaine base disparity.

Especially given the district court's familiarity with this case and the original sentencing proceedings, we are unable to discern, and Jones fails to identify, any indication in this record that the sentencing judge failed to "faithfully discharge[ ][his] duty to consider the statutory factors," in deciding not to resentence him. We hold that the decision was procedurally reasonable, and affirm. We have considered Jones's remaining arguments and find them to be without merit.

*United States v. Jones*, 408 F. App'x 416, 420–22 (2d Cir. 2010) (citations and internal quotation marks omitted).

Mr. Jones subsequently petitioned the Supreme Court for a writ of certiorari; the Supreme Court denied it on April 4, 2011. *Lyle Jones v. United States*, 563 U.S. 929 (2011).

On April 23, 2012, Mr. Jones moved to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. Motion to Vacate, Set Aside, or Correct Sentence, dated Apr. 23, 2012, *Jones v. United States*, No. 12-cv-601 (EBB), ECF No. 1.

On December 5, 2014, United States District Judge Ellen Bree Burns denied Mr. Jones's § 2255 motion. *Lyle Jones v. United States*, No. 3:12-cv-601 (EBB), 2014 WL 6871198, at *5 (D. Conn. Dec. 5, 2014) ("Jones's appellate counsel's strategic decision to not raise a meritless sufficiency of the evidence argument as to the existence of the charged enterprise hardly rises to the level of ineffective assistance or professional incompetence. Accordingly, Jones cannot show that his appellate counsel's representation fell below an objective standard of reasonableness, and his Sixth Amendment ineffective assistance of counsel claim would fail as a matter of law even if his habeas petition had been timely filed.") (citations omitted).

On April 23, 2015, the Second Circuit denied Mr. Jones's motion for a certificate of appealability and leave to proceed *in forma pauperis*, finding that he had failed to make a substantial showing of the denial of a constitutional right. Mandate, dated Apr. 23, 2015, No. 3:12-cv-601 (EBB), ECF No. 16.

On February 8, 2017, Mr. Jones moved *pro se* for a reduction of his sentence under 18 U.S.C. § 3582(c)(2) and Amendments 706, 750, and 782 to the Sentencing Guidelines. Motion for Reduction of Sentence, dated Feb. 8, 2017, ECF No. 2453. Mr. Jones moved to amend his motion on March 1, 2017. Motion to Amend Motion for Reduction of Sentence, dated Mar. 1, 2017, ECF No. 2454.

On March 9, 2017, the U.S. Probation Office filed a supplemental presentence investigation report, arguing that Amendments 706, 760, and 782 would not result in a reduction of his sentence because it would result in the same base offense level, 38, as was presented in the original presentence report, and because there was so much heroin involved in Mr. Jones's conviction that it would not result in any change to his offense level or guideline term of

imprisonment. Amendment 782 Addendum to the Presentence Report, dated Mar. 9, 2017, ECF No. 2455.

On December 21, 2018, Congress passed, and President Donald J. Trump signed into law, the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (hereafter, the "First Step Act") which "made retroactive some provisions of the Fair Sentencing Act [of 2010, Pub. L. 111-220; 124 Stat. 2372]." *United States v. Bobby Medina*, No. 3:05-cr-58 (SRU), 2019 WL 3769598, at *2 (D. Conn. July 17, 2019).

On May 29, 2019, Mr. Jones moved for his immediate release or resentencing under Section 404 of the First Step Act. *See* Def.'s Mot.

On June 12, 2019, as required by the District's February 11, 2019 Standing Order in First Step Act cases, the U.S. Probation Office filed a supplemental Pre-Sentencing Report, and determined that Mr. Jones was not entitled to relief under the First Step Act. *See* First Step Act of 2018 Addendum to the Presentence Report, dated June 12, 2019 ("First Step PSR Supp."), ECF No. 2517.

On July 3, 2019, Mr. Jones filed a memorandum in support of his motion. Def.'s Mem.

On August 9, 2019, the Government opposed Mr. Jones's motion. Gov't Opp.

On August 16, 2019, Mr. Jones filed a reply in further support of his motion. Reply to Gov't Opp., dated Aug. 16, 2019 ("Def.'s Reply"), ECF No. 2553.

On July 17, 2019 and August 21, 2019, Mr. Jones filed notices of supplemental authority in support of his motion. *See* Notice of Supplemental Authority, dated July 17, 2019, ECF No. 2532; Notice of Supplemental Authority, dated Aug. 21, 2019, ECF No. 2556.

On September 4, 2019, the Court held a hearing on the motion. Minute Entry, dated Sept. 4, 2019, ECF No. 2572.

## II.     STANDARD OF REVIEW

Enacted in 2018, "Section 404 of the First Step Act authorizes retroactive application of Sections 2 and 3 of the Fair Sentencing Act to defendants who were sentenced for crack cocaine offenses committed prior to August 3, 2010." *United States v. Jamel Williams* ("*J. Williams*"), No. 03-CR-795, 2019 WL 3842597, at *2 (E.D.N.Y. Aug. 15, 2019). The Fair Sentencing Act in 2010 "'reduced [future] statutory penalties for cocaine base[] offenses' in order to 'alleviate the severe sentencing disparity between crack and powder cocaine.'" *Medina*, 2019 WL 3769598, at *3 (quoting *U.S. v. Sampson,* 360 F. Supp. 3d 168, 169 (W.D.N.Y. Mar. 13, 2019)); *see also* Fair Sentencing Act of 2010, Pub. L. No. 220; 124 Stat. 2372.

"Specifically, section 404 of the First Step Act permits 'a court that imposed a sentence for a covered offense' to 'impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed.'" *United States v. Lawrence Williams* ("*L. Williams*"), No. 03-CR-1334, 2019 WL 2865226, at *2 (S.D.N.Y. July 3, 2019) (quoting First Step Act § 404).

 "The First Step Act does not mandate sentence reductions for defendants" who are eligible for relief. *United States v. Glore*, 371 F. Supp. 3d 524, 527 (E.D. Wis. Mar. 6, 2019). Instead, "it leaves to the court's discretion whether to reduce their sentences." *Id.*; *see also United States v. Rose*, 379 F. Supp. 3d 223, 233 (S.D.N.Y. May 24, 2019) ("Congress clearly intended relief under § 404 of the First Step Act to be discretionary, as the Act specifically provides that '[n]othing in this section shall be construed to require a court to reduce any sentence pursuant to this section.'") (quoting First Step Act, § 404(c)).

## III.    DISCUSSION

The threshold issue is Mr. Jones's eligibility for relief, which requires the Court to determine first whether he was convicted of a "covered offense" under Section 404 of the First Step Act. If Mr. Jones is eligible for relief, the Court then must determine whether its discretion should be exercised to reduce his current sentence and, if so, by how much.

### A.  Covered Offense

Section 404(a) of the First Step Act defines a "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372), that was committed before August 3, 2010." First Step Act § 404(a).

Nothing in this language restricts eligibility to defendants who were only convicted of a singular violation of a federal criminal statute whose penalties were modified by section 2 or section 3 of the Fair Sentencing Act. So long as a defendant was convicted of "a violation"—i.e., at least one violation—for which the penalties were modified by section 2 or 3 of the Fair Sentencing Act, he or she is eligible for relief.

As a multitude of district courts across the country have now recognized, "[i]t is the statute of conviction, rather than a defendant's actual conduct, that determines a defendant's eligibility under the First Step Act." *L. Williams*, 2019 WL 2865226, at *2 (S.D.N.Y. July 3, 2019) (citing *Rose*, 379 F. Supp. 3d at 228–31); *United States v. White*, No. 99-CR-628-04, 2019 WL 3228335, at *2 n.1 (S.D. Tex. July 17, 2019) (collecting forty-one district court cases reaching this conclusion); *see also United States v. Boulding*, 379 F. Supp. 3d 646, 651 (W.D. Mich. 2019) ("[E]ligibility under the language of the First Step Act turns on a simple, categorical question: namely, whether a defendant's offense of conviction was a crack cocaine offense

affected by the Fair Sentencing Act. If so, the defendant is categorically eligible for consideration . . . ."); *but see White*, 2019 WL 3228335, at *5 ("Only a few courts have sided with the government's position that eligibility turns on the defendant's actual conduct, rather than the charged offense . . . .") (collecting cases).

Eligibility for relief under the First Step Act thus turns not on whether a conviction, even if it incorporates several violations of criminal statutes, is a "covered offense," but whether there is a conviction of a violation of a criminal statute for which the statutory penalties were modified by section 2 or 3 of the Fair Sentencing Act. "The Fair Sentencing Act modified the penalties for a crime involving 50 grams or more of crack cocaine and, therefore, that crime is a 'covered offense' for purposes of the First Step Act." *Medina*, 2019 WL 3769598, at *2 (quoting First Step Act § 404(a)).

The Government argues that Mr. Jones is ineligible for relief under the First Step Act for two reasons.

First, the Government argues that Mr. Jones is ineligible because his drug conspiracy conviction involved not only crack cocaine, but also "a quantity of heroin that independently triggers the statutory scheme of § 841(b)(1)(A)"—i.e., that provides for a statutory penalty of ten years to life. Gov't Opp. at 1; *see also id.* at 12–17; First Step PSR Supp. at 3 ("In light of the quantity of heroin for which Mr. Jones was accountable, the statutory penalties pertaining to Count 5 would continue to stem from 21 U.S.C. § 841(b)(1)(A) and were not modified by the Fair Sentencing Act of 2010. Thus, the probation officer does not believe Count 5 constitutes a 'covered offense' for which the Act provides the Court with the authority to considering imposing a reduced sentence.").[1]

---

[1] The Government also argues, in a footnote, that the "enormous quantities" of crack cocaine found by Judge Dorsey at sentencing "would still render him ineligible" for relief under Section 404. Gov't Opp. at 18 n.8. As this Court has

Second, the Government argues that Mr. Jones is ineligible because he was also convicted of RICO and RICO conspiracy (Counts One and Two), the statutory penalties for which were not changed by sections 2 and 3 of the Fair Sentencing Act:

> The jury found the defendant engaged in a pattern of racketeering activity as a result of his participation in the Middle Court heroin and crack-cocaine conspiracy (Racketeering Act 1-C) and the conspiracy to murder members of the rival Foundation gang (Racketeering Act 9). Under 18 U.S.C. § 1963(a), the statutory penalty for a RICO conviction is up to 20 years 'or for life if the violation is based on a racketeering activity for which the maximum penalty includes life.' *See* 18 U.S.C. §§ 1962(a) and 1963(a). Here, the maximum penalty for the underlying racketeering activity – namely, racketeering act 1-C – was life in prison, because that racketeering predicate involved over 1000 grams of heroin and 50 grams of crack-cocaine, just like Count Five. And just as sections 2 and 3 of the Fair Sentencing Act did not modify the statutory penalties for Count Five, those provisions did not change the statutory penalties for racketeering act 1-C. Accordingly, the RICO penalties (which were driven by the statutory penalties on racketeering act 1-C) similarly are unchanged, and are not "covered offenses" under the First Step Act.

Gov't Opp. at 17–18. Probation makes a very similar argument in its supplemental PSR:

> Additionally, the probation officer does not believe that either Counts 1 or 2, which charged RICO and RICO Conspiracy, constitute "covered offenses" within the meaning given that term in the First Step Act. The probation officer acknowledges that the statutory penalties pertaining to violations of 18 U.S.C. §§ 1962(c) and (d) are detailed within 18 U.S.C. § 1963, which indicates the maximum imprisonment penalty is not more than 20 years (or for life if the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment.) It is the probation officer's view that the RICO and RICO Conspiracy penalties

---

previously noted, and the Government admits, *see id.*, that position has been rejected by the majority of district courts to have considered the issue. *See, e.g.*, *United States v. Boulding*, 379 F. Supp. 3d 646, 651–52 (W.D. Mich. 2019) ("[E]ligibility under the language of the First Step Act turns on a simple, categorical question: namely, whether a defendant's offense of conviction was a crack cocaine offense affected by the Fair Sentencing Act. If so, the defendant is categorically eligible for consideration regardless of actual quantities. The particular quantities affect only the Court's discretionary call on whether to grant a reduction in sentence . . . . For purposes of eligibility alone, quantity determinations are unnecessary. The statute rests eligibility on the nature of a defendant's prior conviction: specifically, whether it was a 'covered offense.'"). The Government argues, however, that the Court need not address this issue in this case because Mr. Jones was convicted of a multiple-drug offense. Gov't Opp. at 18 n.8.

> pertaining to Mr. Jones have not changed and remain a maximum of life because Racketeering Act 9 – Conspiracy to Murder Foundation Members and Associates continues to carry a maximum statutory penalty of life imprisonment. Thus, the penalties pertaining to the RICO and RICO Conspiracy counts have not been modified by Sections 2 or 3 of the Fair Sentencing Act of 2010.

First Step Supp. PSR at 4.

The Court disagrees.

Before the Fair Sentencing Act's enactment, a jury convicted Mr. Jones and Judge Dorsey sentenced him for an offense involving 50 grams or more of crack cocaine, the statutory penalties for which were modified by Section 2 of the Fair Sentencing Act. Thus, his conviction was premised, at least in part, on his violation of 21 U.S.C. § 841(b)(1)(A). Mr. Jones therefore was convicted of a "covered offense" and is eligible for relief under the First Step Act. *See Medina*, 2019 WL 3769598, at *4.

The Government points to several district courts that have concluded that defendants convicted for drug charges involving both crack cocaine and drugs other than crack cocaine were ineligible for relief under the First Step Act, Gov't Opp. at 13–14 (collecting cases). Concluding otherwise, the Government argues, "would expand the First Step Act beyond all recognition, essentially entitling every drug defendant to a sentencing reduction even if they were never charged with crack cocaine." Gov't Opp. at 14.

Of course, eligibility for relief under the First Step Act should not be confused with an entitlement to relief. Indeed, eligibility for relief under the First Step Act does not result in automatic relief. As another district court in this Circuit has noted, "Congress clearly intended relief under § 404 of the First Step Act to be discretionary, as the Act specifically provides that '[n]othing in this section shall be construed to require a court to reduce any sentence pursuant to this section.'" *Rose*, 379 F. Supp. 3d at 233 (quoting First Step Act, § 404(c)); *see also United*

*States v. Mack*, No. 00-323-02 (KSH), 2019 WL 3297495, at *12 (D.N.J. July 23, 2019)

("Finding these defendants eligible does not write off their responsibility for dealing in powder

cocaine as well as dealing in crack cocaine. That constitutes a fact that bears on what relief these

defendants are entitled to. What the Court finds now is that the jury's verdict does not disqualify

the Mack defendants from consideration under § 404."); *United States v. Lewis*, No. CR 08-0057

(JB), 2019 WL 2192508, at *22, *30 (D.N.M. May 21, 2019) (finding defendant eligible for

relief under the First Step Act but declining to reduce his sentence in light of a "disturbing"

criminal history "filled with violence and bad behavior").

Accordingly, having been convicted of a "covered offense," Mr. Jones is eligible for

relief under the First Step Act.

### B. Scope of Relief

Having concluded that Mr. Jones is eligible for relief under the First Step Act, the Court

now must determine whether a sentence reduction is appropriate and, if so, what reduction is

warranted.

While the Court need not reach the issue of whether the First Step Act authorizes a

"plenary re-sentencing," as some courts have held, *see, e.g.*, *Medina*, 2019 WL 3769598, at *6,

unlike previous rounds of sentencing reform, "the First Step Act does not impose any artificial or

guideline limits on a reviewing court." *Boulding*, 379 F. Supp. 3d at 653. As the court in

*Boulding* explained:

> The First Step Act is different. The Sentencing Commission has
> nothing to do with it. Rather, Congress has directly authorized the
> possible reduction under 18 U.S.C. § 3582(c)(1)(B). Under that
> section a 'court may modify an imposed term of imprisonment to
> the extent otherwise expressly permitted by statute or by Rule 35 of
> the Federal Rules of Criminal Procedure.' Because the First Step
> Act expressly permits courts to modify a term of imprisonment, the
> First Step Act serves as the basis for relief under Section

> 3582(c)(1)(B). The limits of 18 U.S.C. § 3582(c)(2) are inapplicable. The only limits found in the First Step Act are the statutory minimums of the Fair Sentencing Act's new thresholds. The sentencing guidelines inform the Court's discretion to be sure. But they do not limit the Court's discretion as they did in earlier rounds under 18 U.S.C. § 3582(c)(2).

*Boulding*, 379 F. Supp. 3d at 653 (citations omitted).

The Government argues that the "authority of a district court to modify a prison sentence is narrowly limited by 18 U.S.C. § 3582, and a 'court may not modify a term of imprisonment once it has been imposed except that . . . the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute.'" Gov't Opp. at 20 (quoting 18 U.S.C. § 3582(c)(1)(B). All the First Step Act permits, the Government insists, is "a limited exception, providing that the court may '*impose a reduced sentence* as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed.'" *Id.* (emphasis in original) (citing First Step Act § 404(b)).

The Court disagrees.

As the *Boulding* court and many other courts have held, the First Step Act calls for a level of discretion that is previously unseen in sentencing statutes. It does not "impose any extrinsic limits on a sentencing court." *Mack*, 2019 WL 3297495, at *12.

As already discussed, Mr. Jones's drug sentence for Count Five was determined from a single count of conviction that involved two types of drugs: crack cocaine and heroin. But Mr. Jones was not only convicted of drug conspiracy. He was also convicted of RICO and RICO Conspiracy.

When Judge Dorsey pronounced Mr. Jones's sentence, he said the guidelines indicated a life sentence was warranted for each count of conviction:

Well, the guidelines, providing as they do, it will be the judgment and the sentencing – the sentence of the Court that the defendant, under Count One, will be committed to the custody of the attorney general, or his duly authorized representative, for a period of life. So therefore, it will be for the duration of the defendant's life without parole.

Secondly, Count Two, it will be the judgment of the Court, the defendant will be committed to the custody of the attorney general for life, the sentence to be served concurrently with the sentence in Count One.

Count Five, it'll be the judgment of the Court that the defendant will be sentenced to the custody of the attorney general for life, to be served with the -- concurrently with the sentence under Count One, and with the same absence of any qualification of eligibility for parole.

Sentencing Tr. 23:2–19.

The sentencing transcript thus indicates that, with respect to Count Five, Mr. Jones was sentenced under one sentencing package, and that Judge Dorsey did not determine that sentence based on each individual drug, but instead imposed a sentence that would serve the ends of justice with respect to both drugs involved in the offense conduct.

The Court therefore finds that the crack cocaine violation was addressed with heroin as part of a single sentencing package, and that these two offenses are inextricably related. The Court thus has the authority to reduce Mr. Jones's entire drug conspiracy sentence under the First Step Act. *See United States v. Triestman*, 178 F.3d 624, 630 ("We therefore hold that the district court had the authority under § 2243 to dispose of the matter as law and justice require, and that this authority included the power to resentence Triestman to the overall term that he would have received on his interdependent sentencing package absent his unlawful § 924(c) conviction."); *see also id.* at 631–32 (collecting cases).

But that still leaves the question of how this Court should treat the RICO and RICO Conspiracy convictions.

The U.S. Probation Office recommended sentences for Mr. Jones for these counts, based on the 2003 Sentencing Guidelines:

> The guideline for Counts One and Two, which charge RICO and RICO Conspiracy, is U.S.S.G. § 2El.l, comment.(n.l) which directs that each underlying act be treated as if contained in a separate count of conviction. The defendant is convicted of Act 1-C, which charges the Middle Court Drug Conspiracy, Act 9, which charges Conspiracy to Murder Foundation Members, and Count Five, which also charges the Middle Court Drug Conspiracy. These offenses are prohibited from grouping under U.S.S.G. § 3Dl.2, and therefore a combined offense level is required under§ 3Dl.4.

2003 PSR ¶ 102. The Sentencing Guidelines then required the U.S. Probation Office (and the Court) to treat each underlying act in the RICO and RICO conspiracy counts as if they were separate counts, and then to group all closely related "counts" together. *See* U.S.S.G. § 2E1.1, cmt. n.1 ("Where there is more than one underlying offense, treat each underlying offense as if contained in a separate count of conviction for the purposes of subsection (a)(2)."); U.S.S.G. § 3D1.2 ("All counts involving substantially the same harm shall be grouped together into a single Group.").

The U.S. Probation Office thus separated the drug conspiracy acts from the conspiracy to murder acts. The U.S. Probation Office then calculated the Sentencing Guidelines range applicable to each Group, and was required to use the offense level of the most serious of the counts comprising the Group, *i.e.*, the highest offense level of the counts as follows:

| | **Group One**<br>Middle Court Drug Conspiracy (Count One, Rack. Act 1-C)<br>RICO Conspiracy (Count Two)<br>Drug Conspiracy (Count Five) |
|---|---|
| **BASE Offense Level** | **38**<br>(based on conspiracy to distribute > 1.5 kilograms of cocaine base) |
| Specific Offense Characteristics | + 2<br>(based on firearm use as part of conspiracy, including by Mr. Jones) |
| Adjustment for Role in Offense | + 4<br>(leader and organizer of five or more people) |
| Adjustment for Use of Minor | + 2<br>(G. Jimenez was 17 years old when she sold under Mr. Jones) |
| Adjustment for Obstruction of Justice | + 2<br>(based on evidence that Mr. Jones threatened use of force and tried to intimated M. Fernandes and cooperating witness) |
| **ADJUSTED Offense Level** | **48** |

| | **Group Two**<br>Conspiracy to Murder Foundation Members (Count One, Rack. Act 9)<br>RICO Conspiracy (Count Two) |
|---|---|
| **BASE Offense Level** | **28**<br>(based on conspiracy to distribute > 1.5 kilograms of cocaine base) |
| Specific Offense Characteristics | 0 |
| Adjustment for Role in Offense | 0 |
| Victim Related Adjustment | 0 |
| Adjustment for Obstruction of Justice | 0 |
| **ADJUSTED Offense Level** | **28** |

*See* 2003 PSR ¶¶ 103–114. Because the offense level for Group Two was nine or more levels less serious than Group One, it was not assigned a "unit" for purposes of computing the total offense level. *See* U.S.S.G. § 3D1.4(c) ("Disregard any Group that is 9 or more levels less serious than the Group with the highest offense level. Such Groups will not increase the

applicable offense level but may provide a reason for sentencing at the higher end of the sentencing range for the applicable offense level.").

As a result, the U.S. Probation Office determined the combined offense level to be 48 for all three counts of conviction, based on Group One's offense level. *Id.* ¶¶ 115–120; *see* U.S.S.G. § 3D1.4 ("The combined offense level is determined by taking the offense level applicable to the Group with the highest offense level and increasing that offense level by the amount indicated in the following table [based on the number of units].”). But because this level was in excess of 43, the Sentencing Guidelines required that Mr. Jones's offense level be reduced to 43. *Id.* ¶ 122; *see* U.S.S.G. ch. 5, pt. A, cmt. n.2.

Those Sentencing Guideline calculations were applied to all three offenses of conviction, resulting in a life sentence on all three counts. *See* 2003 PSR ¶¶ 152–53 (stating that the statutory provisions provided maximum terms of life for Counts One, Two and Five, and a mandatory minimum of 20 years for Count Five, and that the guideline provisions provided "a guideline sentence of life imprisonment"). Thus, while Judge Dorsey pronounced individual life sentences for each count of conviction, those sentences all flowed from a single offense level and a single Sentencing Guideline calculation determination, a Sentencing Guideline calculation substantially affected, if not driven, by the base offense level for the crack cocaine violation.

Judge Dorsey indicated his discomfort with what he described, in the singular, as a life sentence:

> Life is a long sentence, I'm fully aware of that, and I am not entirely content and at ease with a dead end sentence that you face, but as I said to Mr. Leonard Jones, if you in some way can establish through your conduct, in the meantime, your eligibility under a possibility of some kind of other relief in the form of a pardon or commutation of your sentence, you have the power to qualify yourself in that respect by virtue of your conduct in the meantime.

> Whether you do that or not is up to you, but I just point that out as
> something that you might keep in mind. That doesn't give you any
> guarantees 'cause I don't make the decision, but on the other hand, it
> is not something that is beyond the realm of possibilities, and if you
> want a copy of the regulation, Mr. Bashir, that that is discussed in,
> Mr. Lopez has a copy of it and he can make it available to you.

*Id.* at 26:4–21. The Court further notes that when Judge Dorsey declined to re-sentence Mr.

Jones, he titled his decision "Order re: Reduction of Sentence re: Crack Cocaine Offense." *See*

Order re: Reduction of Sentence re: Crack Cocaine Offense, dated Aug. 11, 2009, ECF No.

2309. Again, Judge Dorsey did not speak of multiple sentences, but a single sentence. *See id.*

("Accordingly the sentence originally imposed will not be reduced.").

The RICO, RICO Conspiracy, and heroin violations thus were addressed together, with

the crack cocaine violation, as part of a single sentencing package, and these offenses thus are

inextricably related. The Court therefore has the authority to reduce Mr. Jones's entire sentence

under the First Step Act. *See Triestman*, 178 F.3d at 630 ("We therefore hold that the district

court had the authority under § 2243 to dispose of the matter as law and justice require, and that

this authority included the power to resentence Triestman to the overall term that he would have

received on his interdependent sentencing package absent his unlawful § 924(c) conviction.");

*see also id.* at 631–32 (collecting cases).

But this still leaves the question of whether—and how—the Court should exercise this

discretion. The operative issue at this stage is whether there is a basis consistent with the First

Step Act for reducing his life sentences.

Mr. Jones argues that his sentence should be reduced and provides several different ways

a reduction could be made, short of plenary resentencing:

> At the time of his 2003 sentencing, Mr. Jones's guidelines were
> calculated on the basis of a criminal history category of IV (PSR
> ¶ 129) and a final offense level of 43. PSR ¶ 122. The offense level,

even though it involved multiple RICO counts, was driven by the quantity of crack cocaine attributable to Mr. Jones – more than 1.5 kg. PSR ¶ 103. The resulting range was "life." If he were to be sentenced today for the same actions, his base offense level would start at 32 (for 840 g to 2.8 kg of cocaine base, 2D1.1(c)(4)). Applying the same enhancements results in an adjusted offense level of 42. Following the same grouping analysis results in a final offense level of 42.

At criminal history category IV and offense level 42, the guideline range is 360-life. If the Court were to use the 1:1 crack:powder ratio, Mr. Jones's base offense level would be 24 (for 500 g – 2 kg of cocaine). Application of the same enhancements results in an offense level of 34 prior to the grouping analysis, which adds one level because the RICO group 2 is now only 5-8 levels less serious than the highest group; originally and with the 18:1 ratio it was 9 or more levels less serious and thus did not add to the total offense level under 3D1.4. Thus the final offense level would be 35. At criminal history category IV, the resulting guideline range is 235-293 months.

As noted above, Mr. Jones has already served the equivalent of a 268 month sentence, placing him near the top of the range he would face using a 1:1 ratio. A sentence of time served at this point would not be a windfall or an act of generosity. It would be a recognition that Mr. Jones has paid his debt to society in full.

Def.'s Reply at 14–15 (footnotes omitted).

The Government argues that Judge Dorsey adopted the Pre-Sentencing Report's finding that Mr. Jones was responsible, as a leader of the conspiracy, for over 140 kilograms of heroin and over 40 kilograms of crack-cocaine between 1996 and 1999, and that either of these drug quantities would place Mr. Jones at a base offense level of 38. *See* Gov't Opp. at 11 ("Under any calculation of the Guideline—whether under the amended crack cocaine guidelines, or under the heroin quantity—the quantities are so high that the resulting base offense level remains at a level 38.").

Mr. Jones argues that his offense level calculation led to a Sentencing Guidelines sentence of life, and that this was based on the jury's quantity finding of 1.5 kilograms of crack cocaine. *See* Def.'s Reply at 14.

The Court agrees.

With respect to quantity, the Court will focus simply on the 1.5 kilograms of crack cocaine found by the jury.

Under today's Sentencing Guidelines, Mr. Jones's base offense level for a crime involving 1.5 kilograms of crack cocaine—located on the Drug Sentencing Table as 1.5 kilograms of powder cocaine, to account for the elimination of the crack-powder cocaine disparity[2]—is 24. *See* U.S.S.G. § 2D1.1(c)(4).

In determining whether Mr. Jones's sentence should be reduced, the Court will begin by re-calculating Mr. Jones's offense level for Group One as follows—without disturbing any of the adjustments previously found by Judge Dorsey:

|  | **Group One**<br>Middle Court Drug Conspiracy (Count One, Rack. Act 1-C)<br>RICO Conspiracy (Count Two)<br>Drug Conspiracy (Count Five) |
|---|---|
| **BASE Offense Level** | **24**<br>(based on conspiracy to distribute > 1.5 kilograms of cocaine base, using a 1:1 crack-powder ratio) |
| Specific Offense Characteristics | + 2<br>(based on firearm use as part of conspiracy, including by Mr. Jones) |
| Adjustment for Role in Offense | + 4<br>(leader and organizer of five or more people) |

---

[2] *See, e.g.*, Transcript of Proceedings, *United States v. Damon Walker*, No. 3:99-cr-264-19 (VAB), ECF No. 2541, at 45:4–10 ("I think recognizing that given particularly the First Step Act is directed at and intended to address disparity in terms of how powder cocaine and cocaine base were treated, it would be to recognize the level – the offense level that would have been commensurate with powder cocaine at the time[.]"); *United States v. Telfus Durrant*, No. 3:06-cr-00186 (MPS), ECF No. 61 (D. Conn. Apr. 15, 2019) ("[M]y practice has been to eliminate the crack/powder disparity and to apply the 1:1 ratio at sentencing, and I can think of no fair or just reason to depart from that practice in this context[.]"); Transcript of Proceedings, *United States v. Genero Marte*, dated May 30, 2019, No. 3:08-cr-004 (JCH), ECF No. 1513, at 5:23–25 (applying the 1:1 crack to powder ratio "which I will do because it is what I do now"); Transcript of Proceedings, *United States v. Alexander Leon*, dated May 20, 2019, No. 3:93-cr-199 (JCH), ECF No. 589, at 32 (imposing new sentence using 1:1 ratio).

| Adjustment for Use of Minor | + 2<br>(G. Jimenez was 17 years old when she sold under Mr. Jones) |
|---|---|
| Adjustment for Obstruction of Justice | + 2<br>(based on evidence that Mr. Jones threatened use of force and tried to intimated M. Fernandes and cooperating witness) |
| **ADJUSTED Offense Level** | **34** |

Accordingly, because Group Two is only six levels less serious than Group One, it is assigned one-half unit. U.S.S.G. § 3D1.4(b). This means the offense level in Group One is increased an extra level, yielding a total offense level of 35 for Group One.

Under the current Sentencing Table, the Sentencing Guideline Range for a defendant with a criminal history category of IV (i.e., 7–9 criminal history points) and an offense level of 35 is a term of imprisonment of 235 to 293 months.

Before determining whether Mr. Jones's sentence should be reduced, and if so, by how much, the Court also will consider all of the relevant factors under 18 U.S.C. § 3553(a), and thus will consider "a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in (paragraph 2) of this subsection." *See Rose*, 379 F.Supp.2d at 234 ("[E]ven if consideration of § 3553(a) factors is not expressly required by the First Step Act, the Court concludes that it is appropriate to use that familiar framework to guide the exercise of discretion conferred by the First Step Act.").

Under this statute, the "court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." 18 U.S.C. § 3553(a). Under paragraph (2) of this subsection, the sentence must "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," as well as "afford adequate deterrence to criminal conduct," "protect the public from further crimes of the defendant," and "provide the defendant with needed educational or vocational training,

medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

In addition, the statute requires consideration of "the nature and circumstances of the offense and the history and characteristics of the defendant, "the kinds of sentences available," the relevant "sentencing range established" for the offense, and the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(1), (3),(4), and (6).

In doing so, the Court recognizes that Judge Dorsey previously declined to reduce Mr. Jones's sentence and noted that "upon full review of the record in this case and the pending motion, the factors in the record as rated at the original sentencing remain to be considered now and after consideration there is no basis found from imposing any different sentence even though the guidelines are now only advisory." *See* Order re: Reduction of Sentence re: Crack Cocaine Offense, dated Aug. 11, 2009, ECF No. 2309.

Judge Dorsey likely, and rightfully, had serious concerns about the violent nature of this drug enterprise, as reflected in Mr. Jones's conviction for conspiracy to murder. Indeed, the Government's successful prosecution of this far-ranging and devastating criminal enterprise at the P.T. Barnum Housing Project and the lengthy prison sentences that followed have made Bridgeport and its residents safer. There is nothing in this record to suggest otherwise.

Put another way, a reconsideration of the length of Mr. Jones's sentence cannot and should not be construed as either a reconsideration of his underlying conviction or a reconsideration of the propriety of a lengthy sentence for this conviction. The issue is not whether Mr. Jones should have served a lengthy prison sentence. He should serve a lengthy sentence. Instead, having determined that Mr. Jones is eligible for consideration of relief under

the First Step Act, the issue is whether the length of that sentence should be reduced, having taken into consideration his various criminal acts and all of the other factors relevant under 18 U.S.C. § 3553(a).

In this regard, Judge Dorsey expressed concern over the length of the sentence imposed, noting that he was "not entirely content and at ease with a dead end sentence" and urged Mr. Jones to "establish through [his] conduct, in the meantime, your eligibility under a possibility of some kind of other relief in the form of a pardon or commutation of your sentence . . . ." Sentencing Tr. at 26:4–21. In other words, Judge Dorsey was not unalterably opposed to Mr. Jones serving a term of imprisonment less than life.

As a result, having considered all of the relevant factors under 18 U.S.C. § 3553(a), a sentence reduction from life to a term of years near the top of the Sentencing Guidelines range of 235 to 293 months, as calculated above, would not be inappropriate.

This term of years takes into consideration Mr. Jones's significant drug activity as well as the violent acts of which Mr. Jones was convicted, and in which there was concern he otherwise participated, regardless of conviction, and is sufficient but not greater than necessary to serve the purposes of a criminal sentence. *See* 18 U.S.C. § 3553(a); *see also* Def.'s Mem. at 12 (noting a 2017 Sentencing Commission study of federal sentences that "[o]ffenders committing murder received the longest terms of confinement in fiscal year 2016, at 241 months on average"); *cf. United States v. Jenkins*, 854 F.3d 181, 193 (2d Cir. 2017) (recognizing that Sentencing Commission statistical data "readily available to the district court at the time of sentencing" may "allow for a meaningful comparison" of a defendant's conduct to other relevant offenders).

The Court has also considered Mr. Jones's rehabilitation efforts and his behavior while incarcerated, and both support a reduction of his sentence. *See Pepper v. United States*, 562 U.S.

476, 491 (2011) ("[E]vidence of postsentencing rehabilitation may be highly relevant to several of the § 3553(a) factors that Congress has expressly instructed district courts to consider at sentencing."). In his nearly two decades of incarceration, Mr. Jones has only incurred two disciplinary matters. *See* Def.'s Reply at 16. Additionally, Mr. Jones has used his time wisely while incarcerated: "[D]espite the fact that his sentence does not currently afford any chance of using these skills, he has taken numerous classes, including Real Estate, Parenting, Anger Management, Accounting, Building Maintenance, Drafting, Stocks & Bonds, Basketball [Clinic], Cycling, Referee, Culinary Arts, and NA/AA." Def.'s Mem. at 25.[3]

Given the time Mr. Jones has already served, and the absence of anything in this record to suggest that he would not be eligible for the good-time credits available to all federal prisoners, based on their conduct while incarcerated, *see* 18 U.S.C. § 3624(b), the Court accordingly reduces Mr. Jones's three concurrent life sentences to a sentence of **TIME SERVED**,  a sentence consistent with the current Sentencing Guidelines and the broad remedial purpose of the First Step Act.

Because 21 U.S.C. § 841(b)(1)(A) still mandates a minimum term of supervised release of five years for a crime involving than one kilogram or more of heroin, and Judge Dorsey's previous life sentence did not provide for a term of supervised release, the Court will impose a five (5) year term of supervised release, with all the standard and mandatory conditions required under 18 U.S.C. § 3583(d) and U.S.S.G. § 5D1.3.

If Mr. Jones violates any term of his supervised release, he will be subject to up to two (2) additional years of incarceration for each violation.

---

[3] While not at all dispositive, Mr. Jones's desire to care for his ailing wife, who has Stage IV cancer, and family, is additional evidence of post-sentencing rehabilitation. *See* Def.'s Mem. at 25.

**IV.     CONCLUSION**

For the reasons explained above, the Court (1) **GRANTS** the motion; (2) **ORDERS** that Mr. Jones's sentence of incarceration be **REDUCED** to **TIME SERVED** on all counts; (3) **IMPOSES** a term of supervised release of **5 YEARS**.

The Bureau of Prisons is authorized to delay execution of this Order for up to ten (10) days after its issuance so that the Bureau may make necessary arrangements related to Mr. Jones's release. The Bureau of Prisons is directed to proceed as expeditiously as possible so as to avoid any unnecessary delay.

The Clerk of Court is respectfully directed to file an amended judgment and terminate this case.

**SO ORDERED** at Bridgeport, Connecticut, this 7th day of October, 2019.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE